IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**JOHN W. WOODEN,**　　　　　　　　　　CASE NO. 3:24 CV 1624

　　Plaintiff,

　　v.　　　　　　　　　　　　　　　　　JUDGE JAMES R. KNEPP II

**ANNETTE CHAMBERS-SMITH, et al.,**
　　　　　　　　　　　　　　　　　　　MEMORANDUM OPINION AND
　　Defendants.　　　　　　　　　　　　ORDER

INTRODUCTION

*Pro se* Plaintiff John W. Wooden, an inmate at the Toledo Correctional Institution ("ToCI") at the time of filing[1] brings this action under 42 U.S.C. § 1983 against Defendants Annette Chambers-Smith, Uriah Melton, Michael Swartz, Michael Jenkins, Andrew Rodriguez, Melissa Bowers, and John or Jane Does 1-10. (Doc 1). Currently pending before the Court is Defendants' Motion to Dismiss (Doc. 9). Plaintiff filed a response in opposition (Doc. 11), and Defendants replied (Doc. 12). Jurisdiction is proper under 28 U.S.C. § 1331. For the reasons discussed below, the Court GRANTS Defendants' Motion to Dismiss, but without prejudice.

BACKGROUND

The following facts are taken from Plaintiff's Complaint (Doc. 1), and thus are accepted as true for purposes of a motion to dismiss. *Haviland v. Metro. Life Ins. Co.*, 730 F.3d 563, 566-67 (6th Cir. 2013).

---

1. Plaintiff is now incarcerated at Chillicothe Correctional Institution. *See* Doc. 13.

Plaintiff is currently serving a life sentence for kidnapping, robbery, and murder. *See State v. Wooden*, No. 22 CR 03820 (Franklin Cnty. Ct. of Common Pleas). During the relevant time, he was in Ohio Department of Rehabilitation and Correction ("ODRC") custody at ToCI.

Plaintiff alleges "in the early months of 2024," shortly after his arrival at ToCI, he "received legal mail from the sentencing court that was treated like regular mail by prison officials at the ToCI." (Doc. 1, at ¶¶ 16-17). Plaintiff alleges mailroom employees opened these letters outside his presence and photocopied them; these photocopies were "ultimately stuffed under Plaintiff's cell door when he was not present." *Id.* at ¶ 18. This mail "from the court" contained "private and confidential details of [his] criminal case that originated from the court." *Id.* at ¶ 19.

Plaintiff alleges ODRC adopted Policy No. 75-MAL-03 on or about February 1, 2022; the policy "empowered ODRC mail room employees to treat his legal mail exactly as they had done." *Id.* at ¶ 23. Further, he asserts the Ohio Legislature subsequently amended Ohio Administrative Code § 5120-9-17 to conform to the new ODRC policy. *Id.*

On July 6, 2024, Plaintiff sent an electronic communication called a "kite" to the mailroom after learning of the Policy. *Id.* at ¶ 24. He stated:

> I hereby assert my right to have all legal mail that is addressed to me opened only in my presence, which controlling case law states is any mail to a prisoner from a court, the attorney general, or a lawyer or law firm when marked as legal mail and/or private and/or confidential. See Sallier v. Brooks, 343 F.3d 868 (6th Cir. 2003).

*Id.* Plaintiff alleges Defendant Bowers responded to the kite stating, "[o]nly mail that has a valid control number will be opened in your presence all other mail no matter where it is from will be treated as regular mail and photocopied." *Id.* at ¶ 25.

Plaintiff states that he is currently:

> challenging his convictions and sentence in appeals and postconviction relief remedies, and is therefore being subjected to ongoing violations of his

2

>constitutional rights from the countless correspondences he has received from lawyers, courts and court officers, prosecutor's offices, and the attorney general's office - all of which has been opened outside of his presence despite his specific request that Defendants not do so in accordance with the controlling precedent Sallier v. Brooks . . .

*Id.* at ¶ 27.

As to the individual Defendants, the Complaint states Chambers-Smith is the Director of ODRC and is "in charge of the overall operations of the ODRC, including ODRC policies." *Id.* at ¶ 6. Melton is the Chief Inspector at the ODRC Operations Support Center and "is in charge of resolving appeals in the third and final step of the grievance procedure[.]" *Id.* at ¶ 7. Swartz is the Warden of ToCI and "is in charge of the overall operations of the ToCI." *Id.* at ¶ 8. Jenkins is the Institutional Inspector at ToCI and is "in charge of investigating and resolving the second step of the grievance procedure[.]" *Id.* at ¶ 9. Rodriguez is the mailroom supervisor at ToCI and is "in charge of the overall operations of the mail room, as well as resolving the first step in the grievance procedure[.]" *Id.* at ¶ 10. Bowers is employed in the mailroom and is "in charge of processing incoming mail at the ToCI." *Id.* at ¶ 11.

Plaintiff alleges Defendant Chambers-Smith and John or Jane Does 1-5 "are liable for the violation of Plaintiff's constitutional rights because they enacted, adopted, or otherwise created ODRC Policy 75-MAL-03 in such a way as to preclude Plaintiff from having his legal mail opened only in his presence even after his specific request that they do so." *Id.* at ¶ 30. He further asserts Defendants Swartz, Bowers, and John or Jane Does 6-10 are liable "because they implemented the [same policy] in such a way as to preclude Plaintiff from having his legal mail opened only in his presence even after his specific request that they do so." *Id.* at ¶ 31. Plaintiff also alleges John or Jane Does 6-10 were employed in the mail room at ToCi. *Id.* at ¶ 13. Finally, Plaintiff alleges that Defendants Melton and Jenkins are liable because they "were put on specific notice of the ongoing

rights violations through the grievance procedure, yet failed to take any measures whatsoever to abate said violations." *Id.* at ¶ 32.

On September 23, 2024, Plaintiff filed the instant Complaint asserting Defendants' treatment of his legal mail violates his "First and Fourteenth Amendment rights[.]" *See id.* at ¶ 29.

Plaintiff brings suit against Defendants in both their individual and official capacities. *Id.* at ¶ 5. He seeks declaratory, injunctive, and monetary relief. *Id.* at § VIII.

### STANDARD OF REVIEW

When deciding a motion to dismiss under Federal Civil Rule 12(b)(6), the Court tests a complaint's legal sufficiency. Although a complaint need not contain "detailed factual allegations," it requires more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, a claim survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified). And "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

*Pro se* litigants are given the benefit of the doubt and their pleadings are held to a less stringent standard than those drafted by lawyers. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleading drafted by lawyers[.]") (internal quotations and citations omitted). However, the Sixth Circuit has clarified that leniency toward *pro se* litigants has its limits. *See Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

4

Liberal construction for *pro se* litigants does not "abrogate basic pleading essentials[.]" *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). The Court is not required to conjure unpleaded facts or construct claims against defendants on behalf of a *pro se* plaintiff. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 437 (6th Cir. 2008).

## DISCUSSION

Defendants move to dismiss Plaintiff's claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 9). Defendants argue: (1) Plaintiff failed to identify Defendants' personal involvement in the alleged violations; (2) there is no constitutional violation for an inadequate grievance procedure; (3) Plaintiff's Complaint does not meet the pleading standard; and (4) they are entitled to qualified and Eleventh Amendment immunity. *See id.* at 5-12. In response, Plaintiff asserts he does not challenge the constitutionality of the ODRC mail policy itself; his claim is only that Defendants violated his "constitutional right to have all his legal mail opened only in his presence pursuant to Sallier v. Brooks" and "each time they opened his legal mail outside of his presence thereafter is a distinctly separate violation of his federal constitutional rights." (Doc. 11, at 2). Plaintiff first asserts the Court must deny Defendants' motion because it did not dismiss his Complaint during the screening process under 28 U.S.C. § 1915(e)(2). *Id.* at 1, 3.[2] Plaintiff further contends his Complaint sets forth specific facts showing each Defendant's personal involvement. *Id.* at 3.

For the reasons set forth below, the Court finds: (1) all Defendants are entitled to Eleventh Amendment/sovereign immunity on any official capacity damages claims; (2) Plaintiff's claims against Defendants Jenkins and Melton must be dismissed for failure to identify personal

---

2. The pages of Plaintiff's opposition brief were scanned out of order, with page 3 appearing before page 2. The Court cites to the ECF page numbers.

5

involvement in unconstitutional conduct; and (3) Plaintiff fails to allege sufficient factual content to establish a constitutional violation against the remaining Defendants.

PLRA Screening

Plaintiff contends "Defendants know full well that a federal court is required to screen all complaints filed by prisoners pursuant to the Prison Litigation Reform Act ('PLRA'), and if the complaint fails to state a claim upon which relief can be granted, the court is required to dismiss the complaint before ordering service on prison officials." (Doc. 11, at 1, 3). Defendants respond that Plaintiff failed to show this is a basis to deny their motion.

Under the PLRA, a district court "shall dismiss" a complaint filed *in forma pauperis* "at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted". 28 U.S.C. § 1915(e)(2)(B)(ii). The same standard applies to a dismissal under § 1915(e)(2)(B)(ii) as to a dismissal under Federal Rule of Civil Procedure 12(b)(6). *See, e.g.*, *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (applying Fed. R. Civ. P. 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)). Nevertheless, while the same standard applies, a complaint that passes a screening does not necessarily pass a motion to dismiss. Instead, "the *sua sponte* screening and dismissal procedure is cumulative of, not a substitute for, any subsequent Rule 12(b)(6) motion that the defendant may choose to bring." *Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007); *see also Garewal v. Sliz*, 611 F. App'x 926, 931 (10th Cir. 2015) ("Simply put, the fact that a district court does not dismiss a complaint under [the screening statute] does not mean that the complaint will necessarily withstand a defendant's challenge to its plausibility under Rule 12(b)(6)."). Therefore, the Court finds Plaintiff's argument in this regard without merit.

6

Eleventh Amendment / Sovereign Immunity

Defendants assert they are entitled to Eleventh Amendment Immunity for any official capacity claims. (Doc. 9, at 13). Plaintiff simply responds, in a conclusory fashion, that Defendants are wrong. (Doc. 11, at 3).

A suit against a state official operates as an action against the State itself. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The State of Ohio has not waived its sovereign immunity, nor has it consented to civil rights suits in federal court. *Mixon v. Ohio*, 193 F.3d 389, 397 (6th Cir. 1999). Thus, any official capacity damages claims are barred by sovereign immunity. *WCI, Inc. v. Ohio Dep't of Pub. Safety*, 18 F.4th 509, 513-14 (6th Cir. 2021).[3]

Plaintiff is suing "[a]ll defendants . . . in their individual and official capacities." (Doc. 1, at ¶ 5). He asks this Court to, *inter alia*, award nominal, punitive, and compensatory damages. *See id.* at § VIII. Defendants are immune from suit in their official capacities to the extent Plaintiff seeks monetary damages and their motion to dismiss such claims is granted.

Claims Against Jenkins and Melton – Grievance Procedure

Plaintiff alleges Defendants Melton and Jenkins were put on notice of the alleged rights violations through the grievance process yet failed to take measures to abate them. *Id.* at ¶ 32. Defendants argue "failure to provide appropriate remedies for Plaintiff's grievance or their

---

3. Defendants cite Eleventh Amendment immunity rather than sovereign immunity. The Sixth Circuit has explained that although "courts have often treated Eleventh Amendment immunity and sovereign immunity as interchangeable . . . as a matter of original meaning, the two are conceptually distinct." *WCI, Inc.*, 18 F.4th at 513. It distinguished immunity under the Eleventh Amendment as sounding in subject-matter jurisdiction and containing a diversity requirement; this is different from sovereign immunity which "refers to a state's right 'not to be amenable to the suit of an individual without its consent'", sounds in personal jurisdiction, and does not require diversity. *Id.* at 514 (quoting The Federalist No. 81, at 486 (Alexander Hamilton) (Clinton Rossiter ed., 1961) (emphasis omitted)). Here, Plaintiff is housed in an Ohio prison and sues Ohio prison officials. Therefore "[b]ecause the parties are not diverse, sovereign immunity applies, and the Eleventh Amendment, by its plain terms, does not." *Id.*

7

participation in a grievance procedure is insufficient to trigger liability under § 1983." (Doc. 9, at 7). The Court agrees with Defendants.

"[L]iability under § 1983 must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)). Further, Plaintiff "cannot premise a § 1983 claim on allegations that the jail's grievance procedure was inadequate because there is no inherent constitutional right to an effective prison grievance procedure." *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001); *see also Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003).

Therefore, because Plaintiff has not alleged facts demonstrating Melton or Jenkins personally engaged in unconstitutional conduct, his Complaint fails to state a plausible claim against them and the Motion to Dismiss is granted in this regard.

<u>Claims Against Annette-Chambers Smith, Swarts, Rodriguez, and Bowers</u>

Defendants contend Plaintiff's Complaint does not set forth facts alleging their personal involvement in the purported constitutional violations. (Doc. 9, at 5). Plaintiff contends his "complaint clearly articulates how each Defendant is personally involved, and further demonstrates that Plaintiff put each Defendant on specific notice of said constitutional violations, yet none took any measure to abate the violations". (Doc. 11, at 3). Plaintiff attempts to disclaim a constitutional challenge to the policy itself, but describes the asserted violation as follows:

> Regardless as to the constitutionality of the ODRC's policies and practices regarding legal mail, when Plaintiff asserted his constitutional right to have all his legal mail opened only in his presence pursuant to Sallier v. Brooks, and Defendants[] refused to do so, each time they opened his legal mail outside of his presence thereafter is a distinctly separate violation of his federal constitutional rights.

(Doc. 11, at 2).

8

For a cause of action under § 1983, a plaintiff must plead two elements: "(1) deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008). To sufficiently plead the second element, a plaintiff must allege "personal involvement". *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (citation omitted); *see also Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Sexton v. Cernuto*, 18 F.4th 177, 185-86 (6th Cir. 2021) (holding a plaintiff must show each defendant played an "active role" in the alleged constitutional violation to be held liable under § 1983); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Further, Section 1983 liability cannot be premised solely on a theory of *respondeat superior*. *Hays v. Jefferson Cnty.*, 668 F.2d 869, 872 (6th Cir. 1982). Supervisory officials are not liable in their individual capacities unless they "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Id.* at 874.

*Personal Involvement*

Plaintiff alleges Defendants Chambers-Smith and John/Jane Does 1-5 "enacted, adopted, or otherwise created" ODRC Policy 75-MAL-03 in a way that precluded him from having his legal mail opened only in his presence after a specific request. (Doc. 1, at ¶ 30). He alleges Defendants Swartz, Bowers, and John/Jane Does 6-10 "implemented" Policy 75-MAL-03 in the same manner. *Id.* at ¶ 31. Plaintiff additionally asserts Bowers responded to Plaintiff's kite by stating: "[o]nly mail that has a valid control number will be opened in your presence; all other mail, no matter

9

where it is from, will be treated as regular mail and photocopied." *Id.* at ¶ 25. Plaintiff further alleges John or Jane Does 6-10 are mail room employees. *Id.* at ¶ 14.

Defendants argue these allegations are insufficient to demonstrate how each Defendant was personally involved in any constitutional violation; however, at this stage of the proceedings, the Court finds Plaintiff has sufficiently alleged personal involvement by Defendants Chambers-Smith, Swartz, Bowers, and Rodriguez by alleging they enacted or implemented the mail policy. *See Allah v. Chambers-Smith*, 2023 WL 4030632, at *3 (S.D. Ohio), *report and recommendation adopted sub nom.*, *Allah v. Smith*, 2023 WL 5215408 (S.D. Ohio) (holding allegations of a supervisory official's approval and implementation of mail policy sufficient to plead personal involvement).

*Constitutional Violation*

Defendants next contend that Plaintiff does not plausibly plead facts alleging any of their actions amounted to a constitutional violation. *See* Doc. 9, at 7-12. Although Plaintiff invokes the First and Fourteenth Amendments, his Complaint does not clearly identify which rights under those provisions Defendants allegedly violated. Defendants construe the Complaint as raising, in addition to First Amendment legal mail claim, due process and access to court claims (Doc. 9, at 9-12), but Plaintiff in opposition expressly states he "clearly makes no such arguments in his complaint[,]" (Doc. 11, at 2). As set forth above, Plaintiff continues:

> Regardless as to the constitutionality of the ODRC's policies and practices regarding legal mail, when Plaintiff asserted his constitutional right to have all his legal mail opened only in his presence pursuant to Sallier v. Brooks, and Defendants' [sic] refused to do so, each time they opened his legal mail outside of his presence thereafter is a distinctly separate violation of his federal constitutional rights.

*Id.* The Court therefore addresses only the First Amendment legal mail claim.

10

A prisoner has a First Amendment right to receive and send mail, subject to reasonable limitations for "legitimate penological objectives." *Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003).[4] But when a prisoner's incoming mail is "legal mail," there is a

> heightened concern with allowing prison officials unfettered discretion to open and read an inmate's mail because a prison's security needs do not automatically trump a prisoner's First Amendment right to receive mail, especially correspondence that impacts upon or has import for the prisoner's legal rights, the attorney-client privilege, or the right of access to the courts.

*Id.* at 874 (citing *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996)). As relevant here, an inmate has a First Amendment right to not have certain types of legal mail, including mail received from an attorney or a court, opened outside his presence. *Id.* at 876-78.

Plaintiff contends Defendants violated his First and Fourteenth Amendment rights by implementing a policy permitting the opening of his legal mail outside of his presence and opening legal mail outside his presence. He cites *Sallier* to support this contention. There, the Sixth Circuit held certain correspondence from courts and attorneys may qualify as "legal mail" entitled to heightened protection, but advised that:

> not all mail that a prisoner receives from a legal source will implicate constitutionally protected legal mail rights. Indeed, even mail from a legal source may have little or nothing to do with protecting a prisoner's access to the courts and other governmental entities to redress grievances or with protecting an inmate's relationship with an attorney. When it does, however, we must balance the interest of prison security against the possibility of tampering that could unjustifiably chill

---

4. District courts within the Sixth Circuit have reached differing conclusions on the constitutionality of ODRC's control-number policy. *Compare Whitman v. Gray*, 2022 WL 621553, at *3 (N.D. Ohio) (rejecting a First Amendment challenge and concluding ODRC's legal mail policy "satisfies constitutional requirements"), and *Quinn v. Rodriguez*, 2025 WL 623762, at *7-9 (N.D. Ohio) (upholding the control-number policy under *Turner v. Safley*, 482 U.S. 78, 89-91 (1987), at the summary judgment stage), *with Allah v. Chambers-Smith*, 2023 WL 4030632, at *3 (S.D. Ohio) (finding the constitutionality of the control-number policy "far from well-settled" and denying qualified immunity at the pleading stage), and *Straughter v. Eddy*, 2023 WL 6290069, at *4 (S.D. Ohio) ("it is no surprise that ODRC's new policy has generated constitutional challenges"), and *King v. Aramark Corr. Serv.*, 2024 WL 3461784, at *2 (S.D. Ohio) (holding the control-number policy "does not square with" Sixth Circuit precedent).

>the prisoner's right of access to the courts or impair the right to be represented by counsel. We also note in response to prison officials' security concerns that even constitutionally protected mail can be opened (although not read) and inspected for contraband. The only requirement is that such activity must take place in the presence of the recipient, if such a request has been made by the prisoner.

*Id.* at 874. However, "[w]hile a prisoner has a right to be present when his legal mail is opened, an isolated incident of mail tampering is usually insufficient to establish a constitutional violation. Rather, the inmate must show that prison officials 'regularly and unjustifiably interfered with the incoming legal mail.'" *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (citation omitted); *see also Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003) ("[A] random and isolated incident [of mail interference] is insufficient to establish a constitutional violation.").

Plaintiff alleges that some Defendants implemented a policy permitting the opening and photocopying of mail from lawyers, courts, prosecutors, and other legal sources, and other Defendants personally opened legal mail outside his presence despite his specific request to the contrary. *See* Doc. 1, at ¶¶ 26-27. He claims this occurred on multiple occasions but provides no dates, number of incidents, identifying information, or description of the contents of the mail at issue. Instead, the Complaint relies on general and broad statements that "countless" pieces of legal correspondence were improperly handled. *Id.* at ¶ 27.

While these allegations raise potential constitutional concerns, the Court concludes that the Complaint as drafted contains insufficient factual allegations to allege a constitutional violation and Defendants' motion to dismiss is granted on this basis. Nevertheless, the Court recognizes this is a close call, particularly given Plaintiff's *pro se* status.

As noted above, the law governing ODRC's mail policy and the constitutionality thereof remains unsettled. The Sixth Circuit has also cautioned against dismissing potentially meritorious claims without affording an opportunity to amend. *See Brown v. Matauszak*, 415 F. App'x 608,

12

614 (6th Cir. 2011) ("[I]f it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend.") (quoting 6 C. Wright, A. Miller & M. Kane, *Fed. Prac. & Proc.,* Civil 2d § 1483 (West 1990)). "Particularly where deficiencies in a complaint are attributable to oversights likely the result of an untutored pro se litigant's ignorance of special pleading requirements, dismissal of the complaint without prejudice is preferable." *Id.* at 614-15 (quoting *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990)). Here, although the Court dismisses Plaintiff's Complaint as presently pled, it finds it possible that Plaintiff could correct the deficiencies to state a plausible claim for relief.

Accordingly, while Defendants' Motion to Dismiss is granted because Plaintiff's Complaint fails to state sufficient facts to establish a claim upon which relief can be granted, this dismissal is without prejudice to Plaintiff's ability to file an amended complaint wherein Plaintiff will have an opportunity to allege sufficient facts to state a claim in light of the standards set forth above. *See Brown*, 415 F. App'x at 615; *cf. LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) ("[A] district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA.").

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendants' Motion to Dismiss (Doc. 9) be, and the same hereby is, GRANTED without prejudice as set forth above; and the Court

FURTHER CERTIFIES, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

 s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: September 12, 2025